JURY TRIAL DEMANDED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

---

| | |
|---|---|
| RONALD BENSON, DERRICK HALL, DAWN JOHNSON, JOHN LANSING, STEVEN RAY THOMAS, JR., ROBERT WALDRUP, and MICHELLE WHORFF, individually and on behalf all others similarly situated, ) ) ) ) ) ) | Case. No. 22-cv-1355 |
| Plaintiffs, ) ) | CLASS ACTION COMPLAINT |
| v. ) ) | |
| ERIC SCHMITT, in his official capacity as Attorney General of the State of Missouri, MICHAEL SACK, in his official capacity as Police Commissioner, and the ST. LOUIS METROPOLITAN POLICE DEPARTMENT, ) ) ) ) ) ) | |
| Defendants. ) | |

---

**INTRODUCTION**

1.     The State of Missouri is on the cusp of criminalizing homelessness.

2.     Section 67.2300 of Missouri House Bill 1606, set to take effect January 1, 2023, prohibits all "unauthorized sleeping, camping or the construction of long-term shelters" on "state-owned lands."

3.     Without any guidance or explanation as to what counts as *unauthorized* conduct, the law sweeps over a broad array of conduct and fails to put reasonable Missourians on notice of what is prohibited.

4.     Individuals experiencing homelessness simply may have no place to go. They may have no choice but to sleep or camp on public land.  House Bill 1606 thus criminalizes what people must do to survive.

5.     The law punishes homelessness without providing alternatives to camping and sleeping on public lands.

6.     The law will also deprive state funds from municipalities with homelessness rates higher than the state average that "prohibit or discourage" the enforcement of the law. Come January 1, 2023, municipalities will be incentivized to enforce Section 67.2300 vigorously to avoid losing critical funds.

7.     The law violates the Eighth Amendment ban on the criminalizing status and Fourteenth Amendment ban on criminalizing poverty.  Failing to put ordinary people on notice of what constitutes "unauthorized" conduct, the law also violates due process as impermissibly vague.

8.     Homelessness is often a difficult, unfortunate, and even tragic aspect of our society.  Plaintiffs are not arguing that homelessness is a good thing or that it should be celebrated, nor are Plaintiffs merely seeking to raise awareness around the issue. Rather, Plaintiffs seek to prevent unjust and unconstitutional criminal prosecution under Section 67.2300.  The state admittedly has latitude in its efforts to alleviate human suffering, but when it comes to addressing the problem of homelessness, criminalization is not compassion; it is cruelty.  In this instance, criminalization violates the constitutional rights of people who have no safe alternatives for housing.

9.     Plaintiffs request a temporary restraining order, preliminary injunction, and permanent injunction to enjoin Defendants from enforcing Section 67.2300.

**PARTIES**

10.     Plaintiff Ronald Benson is an adult resident of the City of North St. Louis, Missouri currently experiencing homelessness.  Ex. 1, Declaration of Ronald Benson.  Because

he sleeps and camps on public lands, he is imminently subject to the threat of prosecution under Section 67.2300.  Mr. Benson is unemployed and has a disability; he is also an Army veteran of the Airborne Rangers.  Benson Decl. ¶ 9.

11.     Plaintiff Derrick Hall is an adult resident of the North St. Louis, Missouri currently experiencing homelessness.  Ex. 2, Declaration of Derrick Hall.  Because he sleeps and camps on public lands, he is imminently subject to the threat of prosecution under Section 67.2300.  Though he has a disability and limited mobility in his hip, he is employed.  Hall Decl. ¶ 9.

12.     Plaintiff Dawn Johnson is an adult resident of North St. Louis, Missouri currently experiencing homelessness.  Ex. 3, Declaration of Dawn Johnson.  Because she sleeps and camps on public lands, she is imminently subject to the threat of prosecution under Section 67.2300.  Plaintiff Johnson is unemployed.  She makes an effort to look after people living alongside her in a camp on the riverfront in North St. Louis.  Johnson Decl. ¶ 9.

13.     Plaintiff John Lansing is an adult resident of North St. Louis, Missouri currently experiencing homelessness.  Ex. 4, Declaration of John Lansing.  Because he sleeps and camps on public lands, he is imminently subject to the threat of prosecution under Section 67.2300.  Plaintiff Lansing has been homeless for over ten years.  Lansing Decl. ¶ 9.

14.     Plaintiff Steven Ray Thomas, Jr. is an adult resident of St. Louis, Missouri currently experiencing homelessness.  Ex. 5, Declaration of Steven Ray Thomas, Jr.  Because he sleeps and camps on public lands, he is imminently subject to the threat of prosecution under Section 67.2300.

15.     Plaintiff Robert Waldrup is an adult resident of North St. Louis, Missouri currently experiencing homelessness.  Ex. 6, Declaration of Robert Waldrup.  Because he sleeps

and camps on public lands, he is imminently subject to the threat of prosecution under Section 67.2300.  Plaintiff Waldrup is unemployed and looking for work and has been homeless since May 2022.  Waldrup Decl. ¶ 9.

16.      Plaintiff Michelle Whorff is an adult resident of North St. Louis, Missouri currently experiencing homelessness.  Ex. 7, Declaration of Michelle Whorff.  Because she sleeps and camps on public lands, she is imminently subject to the threat of prosecution under Section 67.2300.  She has a disability and is current unemployed.  Whorff Decl. ¶ 9.

17.      Shelter in the region as described by Plaintiffs is unsafe, inconsistent, and not available in many cases.

18.      Defendant Eric Schmitt is the Attorney General of the State of Missouri.  In that capacity, he is charged with enforcing Missouri state laws and defending them against constitutional challenges.  Subsection 6 of Section 67.2300 gives the Attorney General the power to bring a civil action to enjoin a political subdivision from violating the provisions of that subsection.

19.      Defendant Michael Sack is the Police Commissioner of the St. Louis Metropolitan Police Department.  In that capacity, he will be charged with enforcing Section 67.2300 against individuals who sleep or camp on public land in the City of St. Louis, Missouri.

20.      Defendant St. Louis Metropolitan Police Department (SLMPD) and its officers will be charged with enforcing Section 67.2300 against individuals who sleep or camp on public land in the City of St. Louis, Missouri.

21.      Under *Ex parte Young*, 209 U.S. 123 (1908), Defendants Schmitt and Sack may each be sued in his official enforcement capacity and can be enjoined from violating federal law.

22.     Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the St. Louis Metropolitan Police Department and its law enforcement officers are liable for their unconstitutional policies and practices. The SLMPD's enforcement of Section 67.2300 would violate due process, equal protection, and the Eighth Amendment.

23.     Absent an injunctive order, Plaintiffs face imminent harm under Section 67.2300 and therefore bring this challenge to enjoin its operation.

## JURISDICTION AND VENUE

24.     The Court has original subject matter jurisdiction over this lawsuit according to 28 U.S.C. §§ 1331 and 1343(4) because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights. This suit arises under the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

25.     The Court has personal jurisdiction over Defendants because they operate within Missouri.  The Court has personal jurisdiction over State and city officers for their acts within Missouri.

26.     Because the claims for relief arose within the division, the Eastern Division of the United States District Court for the Eastern District of Missouri is the proper venue under Local Rule 2.07(B)(2).

27.     Venue is proper in the Eastern Division of the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**A.     Section 67.2300 Criminalizes Homelessness and Poverty**

28.     Under subsection 5 of Section 67.2300, set to take effect January 1, 2023, "unauthorized sleeping, camping, or the construction of long-term shelters" on "state-owned lands" is a class C misdemeanor.  Mo. Stat. § 67.2300.

29.     A class C misdemeanor violation subjects an individual to fine of up to $750, *see* Mo. Stat. § 558.002.1(4), and a jail sentence of up to 15 days, *see* Mo. Stat. § 558.011.1(8).

30.     In certain instances, a sentencing court is authorized to impose both a fine and a term of imprisonment for a single class C misdemeanor violation.  Mo. Stat. § 557.011.2.

31.     The law allows for one warning before an individual is cited for a violation; however, a single warning is cold comfort for individuals who have no choice but to sleep outside.

32.     The law fails to clarify what counts as a separate violation.  Assuming that each day of sleeping outside is a separate violation, sleeping outside for just a week could subject someone to 105 days in jail and $5,250 in fines.

**B.      Plaintiffs Regularly Have No Choice but to Sleep Outside, Given the Scarcity of Indoor Sleeping Options Available to Individuals Experiencing Homelessness**

33.     Lacking financial resources and without free, safe and reliable alternatives, Plaintiffs regularly have no option but to sleep outside.  *See* Benson Decl. ¶¶ 2, 5–9; Hall Decl. ¶¶ 2, 5–9; Johnson Decl. ¶¶ 2, 5–9; Lansing Decl. ¶¶ 2, 5–9; Thomas Decl. ¶¶ 2, 5–9; Waldrup Decl. ¶¶ 2, 5–9; Whorff Decl. ¶¶ 2, 5–9.

34.     Plaintiffs' experiences with homelessness are consistent with the recent data from the U.S. Department of Housing and Urban Development (HUD), which tracks and reports statistics with respect to individuals experiencing homelessness.  Point-in-Time (PiT) data from

HUD shows that in 2020 in Missouri, there were 1,648 unhoused individuals and 909 individuals categorized as "chronically homeless," 443 of whom were unhoused.[1]

35.     In addition to Plaintiffs, thirteen other individuals have submitted declarations describing the experience of having no option but to sleep and camp on public lands in and around St. Louis Missouri.  *See* Ex. 8, Declaration of Kristen Annunziato ¶¶ 2, 5–8; Ex. 9, Declaration of Dajuan D. Brown ¶¶ 2, 5–9; Ex. 10, Declaration of Andrea Kunkelman ¶¶ 2, 5–9; Ex. 11, Declaration of Tavarrance Love ¶¶ 2, 5–9; Ex. 12, Declaration of Terone McCambry ¶¶ 2, 5–9; Ex. 13, Declaration of Kimberly McMannus ¶¶ 2, 5–9; Ex. 14, Declaration of Aaron Mitchell ¶¶ 2, 5–9; Ex. 15, Declaration of Mary Moore ¶¶ 2, 5–9; Ex. 16, Declaration of Jeffrey Mumford ¶¶ 2, 5–9; Ex. 17, Declaration of Lavar Roberts ¶¶ 2, 5–9; Ex. 18, Declaration of Uriah Thompson ¶¶ 2, 5–9; Ex. 19, Declaration of Bob Wagster ¶¶ 2, 5–9; Ex. 20, Declaration of Keith Warren ¶¶ 2, 5–9.

36.     Numerous plaintiffs and declarants are unemployed and therefore lack income. *See, e.g.*, Benson Decl. ¶ 9; Johnson Decl. ¶ 9; Thomas Decl. ¶ 9; Brown Decl. ¶ 9; Moore Decl. ¶ 9.  Without income, individuals cannot afford to pay rent.

37.     In 2022, at least once per week on average, shelters in the St. Louis area have had to turn people away for lack of capacity.  This leaves persons experiencing homelessness without free and reliable indoor sleeping options.  *See also, e.g.,* Benson Decl. ¶ 7 (describing the unreliability of shelter options).

38.     Even when shelter is available, it is not always a safe option. *See, e.g.,* Johnson Decl. ¶ 6 ("I've known of people being attacked and/or having their property stolen [at a local shelter].").

---

[1] HUD, *2020 Annual Homeless Assessment Report (AHAR) to Congress ("2020 HUD Report")*, available at https://www.huduser.gov/portal/sites/default/files/pdf/2020-AHAR-Part-1.pdf (last visited December 19, 2022), 88. For HUD definitions of "chronically homeless individual" and "unsheltered homelessness," *see* HUD Report 2–3.

39.     Given the scarcity of free, safe and reliable indoor sleeping options within Missouri, Plaintiffs and other homeless and impoverished individuals often have no option but to sleep outside on public land, subjecting them to criminal penalties under Section 67.2300.

40.     Section 67.2300 also makes certain changes to the way homelessness and housing services are funded in Missouri.  The effect of these changes remains to be seen, but even if the funding changes *increase* the number of beds available for homeless individuals, those changes would come months or even years down the line, long after individuals experiencing homelessness are subject to criminal penalties under the law.

**C.      Section 67.2300 Violates Due Process, the Eighth Amendment, and Equal Protection**

41.     Section 67.2300 criminalizes "unauthorized" sleeping, camping and the construction of long-term shelters on public lands, but fails to define what is and is not authorized.  The statute fails to put reasonable people on adequate notice of prohibited conduct, rendering it impermissibly vague in violation of due process.

42.     By criminalizing homelessness, the statute punishes people for their poverty in violation of due process and equal protection guarantees.

43.     The statute also violates the Eighth Amendment by criminalizing the status of homelessness.

**a.      Failing to Define Both "Unauthorized" Conduct and "State-Owned Lands," Section 67.2300 Is Impermissibly Vague in Violation of Due Process**

44.     The due process clause of the Fourteenth Amendment prohibits states from punishing people "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).

45.     Section 67.2300 criminalizes "*unauthorized* sleeping, camping, or the construction of long-term shelters" on "state-owned lands," but nowhere does the statute offer any clue as to what conduct is authorized and what is not.

46.     To survive a void-for-vagueness challenge, a criminal statute "must provide adequate notice of the proscribed conduct" and "must not lend itself to arbitrary enforcement." *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2022).  Section 67.2300 fails to meet both of these requirements.

47.     By failing to define "unauthorized," the statute fails to provide adequate notice of the proscribed conduct in violation of due process.  The inclusion of the word "unauthorized" in the statute can only be read to mean that *some* sleeping, camping, and/or construction of long-term shelter on public lands is authorized.  However, the statute leaves open the central question of what conduct is authorized, and thereby fails to put ordinary people on notice of what is prohibited.

48.     In the case of such an ill-defined statute, reasonable questions as to its meaning abound.  Is authorized conduct that which is specifically authorized by other statutes?  If so, why does Section 67.2300 fail to enumerate, or even refer to the existence of, those other statutes?  By contrast, is it law enforcement agencies, or state agencies, that authorize conduct?  By what mechanism, and when?  Is conduct authorized or de-authorized on the fly?  Even in the case of state-run campgrounds (a likely candidate for authorized sleeping and camping), the consequences of Section 67.2300 are impermissibly unclear — for instance, does the law allow for new limits on sleeping and camping at campgrounds, and if so, how are those limits decided and enforced?

49.     By failing to defined "unauthorized," the statute also lends itself to arbitrary enforcement in violation of due process.  Without guidance as to what is authorized, the statute "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Beckles v. United States*, 137 S.Ct. 886, 894 (2017). The glaring vagueness as to the word "unauthorized" invites speculation and guesswork, not reasoned application, from law enforcement officers and judicial system actors.

50.     The statute also fails to adequately define "state-owned lands."  It is unclear from the statute which lands are covered by this phrase.  Read literally, only lands owned by the State of Missouri would qualify, but the statute uses the term "state-owned" in lowercase, which leaves open the possibility that it is generically referring to "government-owned" lands, possibly including federal, county, city, or other public lands.

51.     Land is not typically marked as "state-owned," so for most people, it will be unclear what land is off-limits for sleeping and camping under Section 67.2300.  Whether a particular underpass is owned by the federal government (as perhaps an Interstate Freeway might be), the State of Missouri (as in a state highway), a county (as in a county road), or other municipal entity is typically unmarked.  The same is true for parks; parkland may be owned and operated by any number of governmental entities, rarely without definite clarity on whether the land is considered "state-owned" for purposes of Section 67.2300.5.

> **b.     Section 67.2300 Criminalizes the Status of Homelessness in Violation of the Eighth Amendment**

52.     Criminalizing status, as opposed to conduct, violates the Eighth Amendment prohibition on cruel and unusual punishment. *See Robinson v. California*, 370 U.S. 660, 667 (1962) (holding that a California law outlawing narcotic addiction violated the Eighth Amendment).

53.     All human beings must sleep at some time; by criminalizing public sleeping in a jurisdiction where individuals experiencing homelessness may not be able to obtain free, safe and reliable shelter, Section 67.2300 criminalizes the status of homelessness and its involuntary incidents in violation of the Eighth Amendment.  *See Martin v. City of Boise*, 920 F.3d 584, 616–17 (2019) (striking down an anti-camping ordinance under the Eighth Amendment); *see also Pottinger v. City of Miami*, 810 F.Supp. 1551, 1565 (S.D. Fla. 1992) (anti-camping ordinances violated Eighth Amendment as applied to individuals with no option but to sleep in public); *see also Johnson v. City of Dallas*, 860 F.Supp. 344, 350 (N.D. Tex. 1994) (holding that a "sleeping-in-public ordinance as applied against the homeless is unconstitutional"), *rev'd on other grounds*, 61 F.3d 442 (5th Cir. 1995).

c.     **The Statute Criminalizes Poverty in Violation of Due Process and Equal Protection**

54.     "Due process and equal protection principles converge" in the case of "indigents in our criminal justice system."  *Bearden v. Georgia*, 461 U.S. 660, 664 (1983).  Together, these Fourteenth Amendment principles prevent outcomes in the criminal justice system from hinging on an individual's financial resources.

55.     Under Section 67.2300, criminal consequences will impermissibly hinge on whether an individual has the money to sleep indoors.  Those who can pay rent will avoid the statute's reach, while those who cannot afford rent, and who are left with no choice but to sleep outdoors, will be subject to criminal punishment.

56.     The availability of free and safe indoor sleeping options is uncertain and outside individuals' control; individuals experiencing homelessness cannot count on safe indoor sleeping options to avoid criminal consequences.

11

57.     Because it requires money to reliably and safely sleep indoors, and because the statute criminalizes sleeping outdoors, the statute effectively criminalizes poverty, violating the due process and equal protection principles reflected in *Bearden*.

## CLASS ACTION ALLEGATIONS

58.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all others similarly situated, as representative of the following class:

> All individuals currently experiencing homelessness or who will experience homelessness who may be subject to criminal prosecution under Missouri Statute Section 67.2300.

59.     Plaintiffs, and others similarly situated, face a credible threat of prosecution and thus imminent harm as a direct and proximate cause of Section 67.2300.

60.     As described below, this action satisfies the prerequisites of numerosity, commonality, typicality, and adequacy of representation required by Fed. R. Civ. P. 23(a)(1)–(4) to proceed as a class action.

61.     Because of the risk of inconsistent adjudications or prejudice to absent class members, as well as the request for injunctive relief, the proposed class also meets the requirements of Rule 23(b)(1) and (b)(2).

**A.      Numerosity — Fed. R. Civ. P. 23(a)(1)**

62.     The persons in the proposed class are so numerous that joinder of all members is impracticable. Although the exact number of class members is unknown to Plaintiffs at this time, it is anticipated that the class is composed of hundreds of members.

63.     Point-in-Time data from HUD shows that in 2020 in Missouri, there were 1,648 unhoused individuals and 909 individuals categorized as "chronically homeless," 443 of whom were unhoused.

**B.      Commonality — Fed. R. Civ. P. 23(a)(2)**

64.     The relief sought is common to all class members: an order declaring Section 67.2300 unconstitutional and preventing its enforcement.

65.     There are also issues of law and fact common to the class.

66.     Among the common issues of fact are:

   a.      Is there a lack of safe, reliable, and free indoor sleeping options reliably available for individuals experiencing homelessness in Missouri?
   b.      Will the non-criminal provisions of Section 67.2300 create safe, reliable, and free indoor sleeping options for individuals experiencing homelessness only *after* the criminal provision can be enforced against individuals experiencing homelessness?
   c.      Is the conduct criminalized by Section 67.2300 involuntary?

67.     Common issues of law include:

   a.      Does Section 67.2300 fail to provide adequate notice of prohibited conduct in violation of due process?
   b.      Does Section 67.2300 lend itself to arbitrary enforcement in violation of due process?
   c.      Do criminal consequences hinge on financial resources under Section 67.2300?
   d.      Does the degree to which criminal consequences hinge on an individual's financial resources under Section 67.2300 violate due process and equal protection?
   e.      Does Section 67.2300 criminalize involuntary conduct?
   f.      Does Section 67.2300 criminalize the status of homelessness in violation of the Eighth Amendment?

**C.      Typicality — Fed. R. Civ. P. 23(a)(3)**

68.     All Plaintiffs are or will be subject to a credible threat of prosecution under Section 67.2300.  Plaintiffs are members of the class.  Plaintiffs face the same imminent harm of

unconstitutional prosecution as the other members of the class.  Plaintiffs' claims are typical of the proposed class and subclass members; indeed, they are identical.

**D.      Adequacy — Fed. R. Civ. P. 23(a)(4) and 23(g)**

69.      Plaintiffs will fairly and adequately represent the interests of the class.  Plaintiffs have no claim antagonistic to those of the Class. In support of this proposition, Plaintiffs would show that:

- Plaintiffs are members of the proposed class;
- Plaintiffs are interested in representing the proposed class;
- Plaintiffs have no interest adverse to the rest of the class; and
- Plaintiffs have suffered the same harm as the proposed class.

70.      Class counsel will also fairly and adequately represent the interests of the class. Plaintiffs are represented by attorneys from Equal Justice Under Law and the Cook Group. Equal Justice Under Law attorneys have experience in litigating complex civil rights matters in federal court, particularly with regards to wealth-based discrimination. The Cook Group and its attorney Stephanie Lummus are experienced in Missouri federal and local courts, having represented clients in civil rights and criminal matters.  Class counsel has extensive knowledge of the relevant constitutional law.

71.      Counsel have devoted significant time and resources to become intimately familiar with the experiences of putative class members in Missouri and the ways in which Section 67.2300 will likely impact those individuals.  Counsel have also developed relationships with Plaintiffs and Missouri-based advocates for individuals experiencing homelessness. The interests of the class members will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E.      Predominance and Risk of Inconsistent Adjudications — Fed. R. Civ. P. 23(b)(1)**

14

72.     The common questions of fact and legal issues applicable to each individual member of the proposed class are identical.  The prosecution of separate suits by individual members of the proposed class would create a risk of inconsistent adjudications of the legal issues and would establish incompatible standards of conduct for any party opposing the class. Common questions of law or fact predominate over any questions affecting only individual class members.  Nothing short of a universally-applied remedy to all members of the class would address the allegations set forth in this complaint.

**F.      Injunctive and Declaratory Relief — Fed. R. Civ. P. 23(b)(2)**

73.     The class seeks injunctive and declaratory relief under Rule 23(b)(2) to enjoin Defendants from enforcing subsection 5 of Section 67.2300, specifically from arresting, citing, warning, or criminally prosecuting any individual under Section 67.2300.5.  Such injunctive and declaratory relief is appropriate because, absent injunctive relief, Defendants are empowered to act in an unconstitutional manner with respect to all class members; an injunction and declaration prohibiting Defendants from enforcing the criminal penalties of Section 67.2300 would provide relief to every class member.

**CLAIMS FOR RELIEF**

**Count One: Violation of Due Process for an Impermissibly Vague Statute**

74.     Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

75.     Due process prohibits punishment under criminal laws so vague that they fail to put ordinary people on adequate notice of prohibited conduct and/or invite arbitrary enforcement.

76.     By failing to give any definition or explanation of what counts as "unauthorized" conduct, Section 67.2300 fails to give adequate notice of prohibited conduct and lends itself to arbitrary and standardless enforcement, and is thus void for vagueness under due process.

**Count Two: Violation of the Eighth Amendment for Criminalizing the Status of Homelessness**

77.     Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

78.     Section 67.2300 criminalizes public sleeping, which is an involuntary incident of life for individuals experiencing homelessness where, as in Missouri, safe and free indoor sleeping options are not reliably available.

79.     By criminalizing an involuntary incident of homelessness, Section 67.2300 violates the Eigth Amendment prohibition on cruel and unusual punishment.

**Count Three: Violation of Due Process and Equal Protection For Criminalizing Poverty**

80.     Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

81.     By criminalizing outdoor sleeping when individuals experiencing homelessness may have no choice but to do because of the lack of safe, reliable, free alternatives, Section 67.2300 violates due process and equal protection.

**REQUEST FOR RELIEF**

82.     WHEREFORE, Plaintiffs demand a jury trial and the following relief: Plaintiffs, and the class they represent face imminent harm, for which they seek relief from Defendants:

a.      A declaratory judgment that subsection 5 of Section 67.2300 is unconstitutional;

b.      A declaratory judgment that the enforcement of subsection 5 of Section 67.2300 is unconstitutional;

c.      An order and judgment temporarily, preliminarily, and permanently

enjoining Defendants from enforcing subsection 5 of Section 67.2300;

d.      A judgment ordering Defendants to train all law enforcement and court employees on the above-mentioned preliminary and permanent injunctions;

e.      An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988;

f.      An order and judgment granting pre- and post-judgment interest;

g.      And any other relief this Court deems just and proper.

                        Respectfully submitted,

                        */s/ Phil Telfeyan*
                        Phil Telfeyan (1029157DC)*
                        Equal Justice Under Law
                        400 7th St. NW, Suite 602
                        Washington, D.C. 20004
                        (202) 505-2058
                        ptelfeyan@equaljusticeunderlaw.org
                        *petition for pro hac vice admission
                        forthcoming*

                        */s/ Stephanie Lummus*
                        Stephanie Lummus (64999MO)
                        Attorney, The Cook Group
                        701 Market St., Ste 1225
                        St. Louis, MO 63101
                        (314) 882-9869
                        slummus@cookgrouplegal.com

                        *Attorneys for Plaintiffs*