# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| RONALD BENSON, DERRICK HALL, DAWN JOHNSON, JOHN LANSING, STEVEN RAY THOMAS, JR., ROBERT WALDRUP, and MICHELLE WHORFF, individually and on behalf all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ERIC SCHMITT, in his official capacity as Attorney General of the State of Missouri, MICHAEL SACK, in his official capacity as Police Commissioner, and the ST. LOUIS METROPOLITAN POLICE DEPARTMENT,<br><br>    Defendants. | Case. No. 22-cv-1355<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Expedited Hearing Requested |

**Table of Contents**

Table of Authorities ........................................................................................................... ii

Exhibit List........................................................................................................................ iii

I.   Introduction........................................................................................................... 1

II.  Statement of Facts................................................................................................. 1

III. This Court Should Temporarily and Preliminarily Enjoin the Enforcement of Subsection 67.2300 .............................................................................................. 3

    A.  Plaintiffs Are Likely to Succeed on the Merits Because Section 67.2300 Is Unconstitutionally Vague, Criminalizes Status in Violation of the Eighth Amendment, and Criminalizes Poverty in Violation of Due Process and Equal Protection ................................................................................................... 3

        i.   Section 67.2300 Is So Vague that It Fails to Put Ordinary People on Adequate Notice of Prohibited Conduct and Invites Arbitrary Enforcement in Violation of Due Process ..................................................... 4

        ii.  Section 67.2300 Criminalizes the Status of Homelessness and Its Involuntary Incidents in Violation of the Eighth Amendment .................. 6

        iii. Due Process and Equal Protection Protect Against Section 67.2300's Criminalization of Poverty........................................................................... 8

    B.  Absent an Injunction, Enforcement of Section 67.2300 Will Cause Irreparable Harm by Violating Constitutional Rights and Deterring Individuals Experiencing Homelessness from Seeking Services ........................................... 10

    C.  The Balance of Equities Favors Injunctive Relief Because Plaintiffs, Defendants, and the Public Have a Strong Interest in the Protection of Constitutional Rights ............................................................................................ 12

IV. In the Alternative, this Court Should Enter an *Ex Parte* Restraining Order Until Defendants Respond ............................................................................................... 13

V.  Conclusion ............................................................................................................... 14

i

## **Table of Authorities**

### **Cases**

*Bearden v. Georgia*, 461 U.S. 660 (1983) .............................................................................. 8
*Beckles v. United States*, 137 S.Ct. 886 (2017) ..................................................................... 5
*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981).................................... 3
*Foucha v. Louisiana*, 504 U.S. 71 (1992)............................................................................. 10
*Griffin v. Illinois*, 351 U.S. 12 (1956).................................................................................... 8
*Johnson v. Bd. of Police Comm'rs*, 351 F. Supp. 2d 929 (E.D. Mo. 2004) ................................. 11
*Johnson v. City of Dallas*, 860 F.Supp. 344 (N.D. Tex. 1994)...................................................... 6
*Johnson v. United States*, 576 U.S. 591 (2015) ..................................................................... 4
*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ................................................................. 9
*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)................................................................................... 9
*Martin v. City of Boise*, 920 F.3d 584 (2019) ................................................................... 6, 8
*Mayer v. Chicago*, 404 U.S. 189 (1971)................................................................................ 8
*Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724 (8th Cir. 2008) ........... 10, 12, 13
*Planned Parenthood of Minn. Inc. v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir.1977) .. 10, 11
*Pottinger v. City of Miami*, 810 F.Supp. 1551 (S.D. Fla. 1992) ........................................... 6
*Robinson v. California*, 370 U.S. 660 (1962) ....................................................................... 7
*Tate v. Short*, 401 U.S. 395 (1971) ....................................................................................... 8
*Williams v. Illinois*, 399 U.S. 235 (1970) .......................................................................... 8, 9

### **Statutes**

Mo. Stat. § 557.011.2.............................................................................................................. 2
Mo. Stat. § 558.002.1(4) ........................................................................................................ 1
Mo. Stat. § 67.2300........................................................................................................ passim

### **Other Authorities**

HUD, *2020 Annual Homeless Assessment Report (AHAR) to Congress ("2020 HUD Report")*, available at https://www.huduser.gov/portal/sites/default/files/pdf/2020-AHAR-Part-1.pdf (last visited December 19, 2022)................................................................................ 3

**Exhibit List**

Exhibit 1, Declaration of Plaintiff Ronald Benson……………………..……………..2, 11

Exhibit 2, Declaration of Plaintiff Derrick Hall……………………………………………....2

Exhibit 3, Declaration of Plaintiff Dawn Johnson……………………………………….....2

Exhibit 4, Declaration of Plaintiff John Lansing………………………………………….2

Exhibit 5, Declaration of Plaintiff Steven Ray Thomas, Jr.……………………………………….2

Exhibit 6, Declaration of Plaintiff Robert Waldrup………………………………………….2

Exhibit 7, Declaration of Plaintiff Michelle Whorff………………………………………..2, 11

Exhibit 8, Declaration of Kristen Annunziato………………………………………...2, 11

Exhibit 9, Declaration of Dajuan D. Brown……………………………………………...........2

Exhibit 10, Declaration of Andrea Kunkelman………………………………………………...2

Exhibit 11, Declaration of Tavarrance Love……………………………………………........2

Exhibit 12, Declaration of Terone McCambry……………………………………………............2

Exhibit 13, Declaration of Kimberly McMannus…………………………………………...2

Exhibit 14, Declaration of Aaron Mitchell…………………………………………..........2

Exhibit 15, Declaration of Mary Moore……………………………………………….......2

Exhibit 16, Declaration of Jeffrey Mumford …………………………………………..................2

Exhibit 17, Declaration of Lavar Roberts…………………………………………….............2

Exhibit 18, Declaration of Uriah Thompson……………………………………………..................2

Exhibit 19, Declaration of Bob Wagster……………………………………………..................2

Exhibit 20, Declaration of Keith Warren……………………………………………..................2

Exhibit 21, Declaration of Audra Youmans………………………………………………….2

I.     **Introduction**

The State of Missouri is on the cusp of criminalizing homelessness in violation of the Eighth and Fourteenth Amendments. Section 67.2300 of House Bill 1606, set to take effect on January 1, 2023, classifies "unauthorized camping, sleeping, or the construction of long-term shelters" on public lands as a class C misdemeanor. The statute fails to put reasonable people on notice of what is prohibited, criminalizes the status of homelessness, and punishes individuals for their poverty. Plaintiffs bring this emergency motion for a temporary restraining order to preserve the status quo and prevent unconstitutional criminal punishment under Missouri Statute Section 67.2300.

Homelessness is an unfortunate and even tragic aspect of our society. While the state does have latitude in its efforts to alleviate human suffering and promote the general welfare, when it comes to addressing the problem of homelessness, criminalization is not compassion; it is cruelty.

It is fundamental that a state cannot criminally punish an individual for sleeping outdoors when there are no safe, reliable alternatives, for such punishment criminalizes someone who has no choice. This Court should preserve the status quo — *ex parte*, if necessary, to prevent this constitutional violation.

II.    **Statement of Facts**

Section 67.2300, set to take effect January 1, 2023, criminalizes homelessness and poverty. Under subsection 5 of the statute, "unauthorized sleeping, camping or the construction of long-term shelters" on "state-owned lands" is a class C misdemeanor. Mo. Stat. § 67.2300.5. A class C misdemeanor violation subjects an individual to fine of up to $750, *see* Mo. Stat. § 558.002.1(4), and a jail sentence of up to 15 days, *see* Mo. Stat. § 558.011.1(8). In certain instances, a sentencing court is authorized to impose both a fine and a term of imprisonment for a

1

single class C misdemeanor violation. Mo. Stat. § 557.011.2. The statute allows for one warning before an individual is cited for a violation, Mo. Stat. § 67.2300.5; however, a single warning will prove futile for homeless individuals who have no choice but to sleep outside because of their poverty — a warning on one day is futile if there is no safe alternative to sleep the next day. Assuming that each day of sleeping outside is a separate violation, sleeping outside for just a week could subject a homeless defendant to 105 days in jail and $5,250 in fines.

Plaintiffs, along with the hundreds of other individuals who experience homelessness in the State of Missouri, regularly have no choice but to sleep outside, given the scarcity of safe, reliable sleeping options for impoverished individuals. *See* Ex. 1, Declaration of Plaintiff Ronald Benson ¶¶ 2, 5–8 (describing not having a place to stay, as well the unreliability and safety concerns of shelters); Ex. 2, Declaration of Plaintiff Derrick Hall ¶¶ 2, 5–8 (same); Ex. 3, Declaration of Plaintiff Dawn Johnson ¶¶ 2, 5–8 (same); Ex. 4, Declaration of Plaintiff John Lansing ¶¶ 2, 5–8; Ex. 5, Declaration of Plaintiff Steven Ray Thomas, Jr. ¶¶ 2, 5–8; Ex. 6, Declaration of Plaintiff Robert Waldrup ¶¶ 2, 5–8; Ex. 7, Declaration of Plaintiff Michelle Whorff ¶¶ 2, 5–8; Ex. 8, Declaration of Kristen Annunziato ¶¶ 2, 5–8; Ex. 9, Declaration of Dajuan D. Brown ¶¶ 2, 5–8; Ex. 10, Declaration of Andrea Kunkelman ¶¶ 2, 5–8; Ex. 11, Declaration of Tavarrance Love ¶¶ 2, 5–8; Ex. 12, Declaration of Terone McCambry ¶¶ 2, 5–8; Ex. 13, Declaration of Kimberly McMannus ¶¶ 2, 5–8; Ex. 14, Declaration of Aaron Mitchell ¶¶ 2, 5–8; Ex. 15, Declaration of Mary Moore ¶¶ 2, 5–8; Ex. 16, Declaration of Jeffrey Mumford ¶¶ 2, 5–8; Ex. 17, Declaration of Lavar Roberts ¶¶ 2, 5–8; Ex. 18, Declaration of Uriah Thompson ¶¶ 2, 5–8; Ex. 19, Declaration of Bob Wagster ¶¶ 2, 5–8; Ex. 20, Declaration of Keith Warren ¶¶ 2, 5–8. In 2022, at least once per week on average, shelters in the St. Louis area have had to turn people away for lack of capacity. *See* Ex. 21, Declaration of Audra Youmans. Plaintiffs'

experiences accord with recent data reported by U.S. Department of Housing and Urban Development (HUD).  In 2020, there were an estimated 1,648 unhoused individuals and 909 individuals categorized as chronically homeless in Missouri.[1]  If the new law is not enjoined, each and every one of these individuals risks being criminalized, even though they lack reasonable alternatives.

Section 67.2300 also makes certain changes to the way homelessness and housing services are funded in Missouri.  The effect of these changes remains to be seen, but even if the funding changes increase the number of beds available for homeless individuals, those changes would come months or even years down the line, long after homeless individuals are subject to criminal penalties under Section 67.2300.5.  The funding changes do nothing to mitigate the constitutional harm to homeless individuals.

## III. This Court Should Temporarily and Preliminarily Enjoin the Enforcement of Subsection 67.2300

Plaintiffs' emergency motion for a temporary restraining order and preliminary injunction should be granted because: (A) Plaintiffs are likely to succeed on the merits of all claims against Defendants; (B) Plaintiffs and the putative class will suffer imminent and irreparable harm absent an injunction; and (C) the balance of harms weighs heavily in favor of a preliminary injunction, which will preserve the status quo because all parties, as well as the public, share an interest in the protection of constitutional rights.  *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (reviewing factors for preliminary injunctive relief).

### A. Plaintiffs Are Likely to Succeed on the Merits Because Section 67.2300 Is Unconstitutionally Vague, Criminalizes Status in Violation of the Eighth

---

[1] HUD, *2020 Annual Homeless Assessment Report (AHAR) to Congress ("2020 HUD Report")*, available at https://www.huduser.gov/portal/sites/default/files/pdf/2020-AHAR-Part-1.pdf (last visited December 5, 2022), 88. For HUD definitions of "chronically homeless individual" and "unsheltered homelessness," *see* HUD Report 2–3.

**Amendment, and Criminalizes Poverty in Violation of Due Process and Equal Protection**

Preliminary injunctive relief is warranted because Plaintiffs are likely to succeed on the merits of their claims that (i) the anti-camping statute, Section 67.2300, is impermissibly vague in violation of due process; (ii) Section 67.2300 criminalizes the status of homelessness and its involuntary incidents in violation of the Eighth Amendment; and (iii) Section 67.2300 criminalizes poverty, violating the protections afforded by due process and equal protection.

> **i. Section 67.2300 Is So Vague that It Fails to Put Ordinary People on Adequate Notice of Prohibited Conduct and Invites Arbitrary Enforcement in Violation of Due Process**

Section 67.2300 is void for vagueness under due process. Subsection 67.2300.5 criminalizes "*unauthorized* sleeping, camping, or the construction of long-term shelters" on "state-owned lands," but nowhere does the statute offer any clue as to what is and is not authorized. Without any definition or guidance as to what conduct is "unauthorized," Subsection 67.2300.5 is "so vague that it fails to give ordinary people fair notice of the conduct it punishes [and is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (identifying fair notice and principled enforceability as two requirements for criminal statutes under due process).

Not defining "unauthorized" deprives the public of fair notice of the conduct that Section 67.2300.5 proscribes. The inclusion of the word "unauthorized" can only be read to mean that *some* sleeping, camping, and construction of long-term shelter on public lands is authorized. However, the statute leaves open the central question of what conduct is authorized, and thereby fails to put ordinary people on notice of what is prohibited. Given the quandary of unauthorized and authorized conduct, reasonable questions as to prohibited conduct abound. Is authorized conduct that which is specifically authorized by other statutes? If so, why does Section 67.2300

4

fail to enumerate, or even refer to the existence of, those other statutes?  By contrast, is it law enforcement agencies, or state agencies, that authorize conduct?  By what mechanism, and when?  Is conduct authorized or de-authorized on the fly?  Even in the case of state-run campgrounds (a likely candidate for authorized sleeping and camping), the consequences of Section 67.2300 are impermissibly unclear — for instance, does the statute create new limits on sleeping and camping at campgrounds, and if so, how are those limits decided and enforced?  The existence of reasonable questions as to what conduct is prohibited under the statute demonstrates the law's impermissible vagueness.

By failing to define "unauthorized," the statute further violates due process by inviting arbitrary enforcement.  Without guidance as to what is authorized, the statute "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."  *Beckles v. United States*, 137 S.Ct. 886, 894 (2017).  The glaring vagueness as to the word "unauthorized" invites speculation and guesswork, not reasoned application, from law enforcement officers and judicial system actors.  Individuals who face bias and stigma in society will be much more likely to have their public sleeping pronounced "unauthorized," while those do not deal with stigma and bias will be "authorized" to sleep publicly and will avoid the statute's reach.  That is simply not law.  Lacking standards for principled enforcement, the case law of Section 67.2300 will be a bastion of guesswork, partiality and prejudice.

The vagueness of the statute is compounded by the ambiguity of the term "state-owned lands."  The law criminalizes sleeping on "state-owned lands," Mo. Stat. § 67.2300.5, but fails to identify which lands are covered by this phrase.  Taken literally, only lands owned by the State of Missouri would qualify.  But the statute uses the term "state-owned" in lowercase, leaving

5

open the possibility that it is generically referring to "government-owned" lands, possibly including federal, county, city, or other public lands. It is not uncommon to generically refer to any government as a "state"; indeed, some countries are referred to as "states." *See State*, Cambridge Dictionary Online, https://dictionary.cambridge.org/us/dictionary/english/state (last visited December 19, 2022) (listing "a country or its government" as a definition for "state").

Perhaps more problematically, the statute envisions no clarity prior to enforcement. "State-owned lands" — such as parks or underpasses — are not typically marked as such. Whether a particular underpass is owned by the federal government (as perhaps an Interstate Freeway might be), the State of Missouri (as in a state highway), a county (as in a county road), or other municipal entity is typically unmarked. The same is true for parks; parkland may be owned and operated by any number of governmental entities, rarely without definite clarity on whether the land is considered "state-owned" for purposes of Section 67.2300.5.

### ii. Section 67.2300 Criminalizes the Status of Homelessness and Its Involuntary Incidents in Violation of the Eighth Amendment

All human beings must sleep at some time; by criminalizing public sleeping and camping in a jurisdiction where homeless and impoverished individuals are not able to obtain safe and reliable shelter, Section 67.2300 criminalizes the status of homelessness and its involuntary incidents in violation of the Eighth Amendment. *See Martin v. City of Boise*, 920 F.3d 584, 616–17 (2019) (striking down ordinance that criminalized public sleeping and camping under the Eighth Amendment); *see also Pottinger v. City of Miami*, 810 F.Supp. 1551, 1565 (S.D. Fla. 1992) (ordinance criminalizing public sleeping violated Eighth Amendment as applied to homeless individuals with no option but to sleep in public); *see also Johnson v. City of Dallas*, 860 F.Supp. 344, 350 (N.D. Tex. 1994) (holding that a "sleeping-in-public ordinance as applied against the homeless is unconstitutional"), *rev'd on other grounds*, 61 F.3d 442 (5th Cir. 1995).

This conclusion stems from the fundamental principle that criminalizing status, as opposed to conduct, violates the Eighth Amendment prohibition on cruel and unusual punishment. *See Robinson v. California*, 370 U.S. 660, 667 (1962) (holding that a California law outlawing narcotic addiction violated the Eighth Amendment).

A step-by-step analysis of the statute demonstrates that it criminalizes status, as opposed to voluntary conduct. First, all people must sleep in order to stay alive. Next, there are some individuals who cannot afford to pay for indoor housing. Some impoverished individuals may find free or otherwise affordable housing through friends or family; others may find safe and reliable shelter or housing from a governmental or nonprofit provider. The remaining individuals, those who cannot gain access to these free and safe indoor housing options, will have no choice but to sleep outdoors. Sleeping outdoors under these circumstances is involuntary. Given the scarcity of safe and reliable indoor housing options in Missouri, *see supra* Section II, Plaintiffs and the putative class members will have no choice but to sleep outdoors. For this involuntary incident of their homelessness and impoverishment, they will be subject to criminal prosecution under Subsection 67.2300.5. The statute thus criminalizes status.

The statute's prohibition of public "camping" similarly criminalizes status in violation of the Eighth Amendment. Individuals who have no choice but to sleep outside must take some steps to protect themselves from the elements in order to stay alive. This includes using blankets, sleeping bags, and tents. The ban on public camping thus captures involuntary incidents of homelessness. The Eighth Amendment problem of the camping ban is exacerbated by the statute's vagueness. As with the term "unauthorized" (*see supra* Section III.A.i), the statute fails to define "camping." Given the lack of clarity in terms, governmental actors may feel authorized to punish not only the use of tents, but also blankets and sleeping bags. In

7

*Martin*, the court noted that one homeless individual had been cited under a Boise public camping ordinance merely for sleeping "wrapped in a blanket with her sandals off and next to her"; especially in light of the ordinance's criminalization of "even the most rudimentary precautions to protect themselves from the elements," the public camping ordinance violated the Eighth Amendment.  *See Martin*, 920 F.3d at 618.  So here too, homeless individuals' rudimentary life-preserving acts may be subject to punishment under Section 67.2300's undefined ban on public "camping."  In criminalizing involuntary incidents of homelessness, the camping ban violates the Eighth Amendment.

### iii. Due Process and Equal Protection Protect Against Section 67.2300's Criminalization of Poverty

"Due process and equal protection principles converge" in the case of "indigents in our criminal justice system."  *Bearden v. Georgia*, 461 U.S. 660, 664 (1983) ("To [imprison an indigent probationer] would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine.  Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.").  Together, due process and equal protection prevent outcomes in the criminal justice system from hinging on an individual's financial resources.  *See Griffin v. Illinois*, 351 U.S. 12, 13 (1956) (criminal defendant could not be denied the right to appeal because of inability to pay for a trial transcript); *Williams v. Illinois*, 399 U.S. 235 (1970) (state could not subject a class of convicted defendants to a period of imprisonment beyond the statutory maximum solely because of their indigency); *Tate v. Short*, 401 U.S. 395, 398 (1971) (unconstitutional to convert a fine into jail time solely because the sentenced person cannot pay the fine); *Mayer v. Chicago*, 404 U.S. 189 (1971) (extending *Griffin* to non-felony appeals); *Bearden*, 461 U.S. at 672–73 (1983) ("To [imprison an indigent probationer] would deprive the probationer of his conditional freedom simply because, through

8

no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.") The fundamental conclusion of these cases is that no one should be punished solely for being poor.

Our nation has a long-standing protection against punishing people for their poverty. Addressing equal protection more specifically in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), the Court observed that cost-based differentials in the criminal justice system were "not merely *disproportionate* in impact[,]" but rather, "wholly contingent on one's ability to pay," thus "'visi[ting] different consequences on two categories of persons[.]'" *Id.* at 127 (quoting *Williams*, 399 U.S. at 242). *M.L.B.*'s analysis directly applies to this case: freedom from incarceration depends on an individual's ability to pay for housing — those with the funds to pay for housing will stay out of jail; those without funds are subject to criminal punishment for public sleeping.

Under the *Bearden* framework, courts must conduct "a careful inquiry into such factors as" (1) "the nature of the individual interest affected," (2) "the extent to which it is affected," (3) "the rationality of the connection between legislative means and purpose," and (4) "the existence of alternative means for effectuating the purpose." 461 U.S. at 666–67. All four *Bearden* factors weigh in favor of injunctive relief preventing enforcement of Section 67.2300.

First, the Plaintiffs' individual liberty interest in freedom from incarceration, as well as their property interest in remaining free from criminal fines, are significant. Second, Section 67.2300 will have a substantial adverse impact on the interests of homeless individuals, subjecting them to criminal detention and fines. *See supra* Section II.

Moreover, the liberty interest in freedom is among the strongest constitutional interests. See *Lee v. City of L.A.*, 250 F.3d 668, 683 (9th Cir. 2001) ("The Supreme Court has recognized

that an individual has a liberty interest in being free from incarceration absent a criminal conviction."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protect by the Due Process Clause from arbitrary governmental action.").

As to the third *Bearden* factor, Section 67.2300 does not rationally promote plausible legislative purposes. The scheme clearly contravenes the governmental interest in safeguarding constitutional rights. *See, e.g.*, *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 752 (8th Cir. 2008). State interests in regulating public lands or in ensuring that homeless individuals have access to services plausibly justify legislative intervention, but they do not excuse the unconstitutional means of regulation authorized by Section 67.2300.

Fourth and finally, alternatives exist that would promote constitutional rights and other governmental interests. Most obviously, Missouri could allocate funding to provide reliable and free housing to homeless individuals.[2] The *Bearden* factors counsel in favor of preliminary injunctive relief.

### B. Absent an Injunction, Enforcement of Section 67.2300 Will Cause Irreparable Harm by Violating Constitutional Rights and Deterring Individuals Experiencing Homelessness from Seeking Services

Plaintiffs' showing that enforcement of Section 67.2300 will violate their constitutional rights establishes that irreparable harm will occur absent injunctive relief. *See Planned Parenthood of Minn. Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977). If not enjoined, the statute will: first, fail to put ordinary people on notice of prohibited conduct and

---

[2] *See* Staten, Lavena and Rankin, Sara, "Penny Wise But Pound Foolish: How Permanent Supportive Housing Can Prevent a World of Hurt" (2019), Homeless Rights Advocacy Project, available at https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=1016&context=hrap (last visited December 19, 2022), i–ii. Upon detailed review of available data, the authors of this article found that the Permanent Supportive Housing (PSH) model, through which persons experiencing homelessness are provided non-time-limited, low-barrier housing and are offered voluntary services, is "the most humane and cost-effective solution to chronic homelessness."

10

invite arbitrary enforcement, in violation of due process; second, criminalize the status of homelessness and its involuntary incidents in violation of the Eighth Amendment; and third, criminalize poverty in violation of due process and equal protection. *See supra* Section III.A. The statute's violation of these constitutional rights, even without a showing of additional harms, establishes irreparable injury. *Planned Parenthood of Minn.*, 558 F.2d at 867.

The statute's practical effects further establish irreparable injury. If the statute is allowed to take effect, individuals experiencing homelessness will find their mere attempts to survive — sleeping and protecting themselves from the elements — subject to constant police attention, if not arrest and criminal punishment. "The resulting intimidating environment is likely to deter individuals from seeking out the services required for daily living[,]" supporting a finding of irreparable harm. *See Johnson v. Bd. of Police Comm'rs*, 351 F. Supp. 2d 929, 946 (E.D. Mo. 2004) (granting a preliminary injunction to unhoused plaintiffs subjected to unconstitutional and destabilizing police conduct). If their mere survival is criminalized, Plaintiffs and other individuals experiencing homelessness will be deterred from seeking out services out of fear of further criminal consequences, which could make the difference between a highly volatile life and a more stable and safe life. The atmosphere of fear that the statute's enforcement will create for individuals struggling to survive further supports a finding of irreparable harm.

Finally, it cannot be unsaid how, during the coldest period of the year, enforcement of the anti-camping statute will disrupt the lives of people already living in dire situations. Separate and apart from the legal arguments against criminalizing homelessness, a brand new regime set to take effect in the middle of winter threatens havoc and chaos in the lives of already marginalized communities. Plaintiffs and class members are traditionally underrepresented, have virtually no income or resources, and may be ill-equipped to handle criminal enforcement at this

11

moment. *See, e.g.,* Benson Decl. ¶ 9 ("I am unemployed. I am also disabled."); Whorff Decl. ¶ 9 ("I am unemployed. I have been homeless for over ten years[.]"); Annunziato Decl. ¶ 9 ("My situation is uncertain, and I often am in fear of where I will have to move to next."). For people whose lives are defined by instability, an additional layer of instability risks being the proverbial straw that breaks the camel's back. To avoid such injury, an injunction pending final resolution of this matter best protects the lives of Plaintiffs and class members.

### C. The Balance of Equities Favors Injunctive Relief Because Plaintiffs, Defendants, and the Public Have a Strong Interest in the Protection of Constitutional Rights

The balance of harms supports injunctive relief because Plaintiffs, the public, and the government have a strong interest in the protection of constitutional rights. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 752 (8th Cir. 2008) (granting preliminary relief upon showing of likely constitutional violations).

Plaintiffs have an interest in remaining free of criminal enforcement that would violate due process, equal protection, and the Eighth Amendment. What Plaintiffs seek is the maintenance of the status quo pending resolution of their claims on the merits. The enforcement of section 67.2300 would disrupt the status quo, violate Plaintiffs' constitutional rights, and subject individuals experiencing homelessness to destabilizing — and standardless (*see supra* Section III.A.i) — criminal enforcement.

The harm that Defendants will face, if any, is slight by comparison. Defendants do not have an interest in disrupting the status quo in favor of an unconstitutional statute. Defendants may argue that the statute was intended to serve the governmental interests in the use of public lands or in ensuring that class members have access to services. Even if Defendants have an interest in these goals, they do not have an interest in pursuing those goals by unconstitutional

means, so they will not be harmed by injunctive relief preventing the operation of Section 67.2300.

"Whether the grant of a preliminary injunction furthers the public interest in [a constitutional case] is largely dependent on the likelihood of success on the merits because the protection of constitutional rights is always in the public interest." *Rounds*, 530 F.3d at 752. For the same reasons that balance of equities favors injunctive relief, so does the public interest. The public, like Plaintiffs and governmental agencies, have an interest in safeguarding constitutional rights.

IV. **In the Alternative, this Court Should Enter an *Ex Parte* Restraining Order Until Defendants Respond**

A tragic consequence of the January 1 effective date is that the anti-camping statute comes at the coldest time of the year in Missouri, which is often the most difficult time for people experiencing homelessness. A criminal statute that threatens to upend whatever sleeping situation Plaintiffs have found is particularly problem in the dead of winter. Plaintiffs are aware of the extraordinary relief requested in this emergency motion, but desperate times call for desperate measures.

In addition, given the urgency of the situation, Plaintiffs respectfully but urgently request that, as temporary relief, this Court enter an *ex parte* order restraining the implementation of Section 67.2300 at least until Defendants respond and this Court can more fully consider the arguments of all parties.

Undersigned counsel is involved in unrelated litigation against the State of Missouri and has e-mailed the Complaint and this Motion to counsel in the Attorney General's Office. Undersigned counsel has also e-mailed both the Complaint and this Motion to a known employee in the St. Louis Police Department. Undersigned counsel has taken these steps given the urgency

13

of the situation while also recognizing that such efforts do not constitute formal service and therefore do not create a legal obligation for Defendants to respond.  However, undersigned counsel is hopeful that Defendants will promptly enter an appearance and respond in writing. Until Defendants respond, so as to prevent grave harm to Plaintiffs and class members, Plaintiffs respectfully request an *ex parte* restraining order to preserve the status quo.

**V.      Conclusion**

For these reasons, Plaintiffs respectfully request that this Court grant their Motion for a Temporary Restraining Order and Preliminary Injunction, or, in the Alternative, *Ex Parte* Motion for a Temporary Restraining Order.

Respectfully submitted,

*/s/ Phil Telfeyan*
Phil Telfeyan (1029157DC)*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
**petition for pro hac vice admission forthcoming*

*/s/ Stephanie Lummus*
Stephanie Lummus (64999MO)
Attorney, The Cook Group
701 Market St., Ste 1225
St. Louis, MO 63101
(314) 882-9869
slummus@cookgrouplegal.com

*Attorneys for Plaintiffs*

14

**Certificate of Service**

    I hereby certify that on December 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered counsel.

                                  */s/ Phil Telfeyan*
                                  Phil Telfeyan
                                  Counsel for Plaintiffs